**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 29 2014, 10:18 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RONALD K. SMITH**
Muncie, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANNY SHANE CLASPELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1310-CR-880 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Kimberly S. Dowling, Judge
Cause No. 18C02-1108-FC-32

**May 29, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Danny Claspell appeals his conviction and five-year sentence for Class C felony child molesting. We affirm in part, reverse in part, and remand.

**Issues**

Claspell raises three issues, which we restate as:

I.      whether the trial court properly admitted portions of Claspell's interview with police into evidence;

II.     whether the trial court properly admitted a statement the victim made to another person into evidence; and

III.    whether Claspell's sentence is inappropriate.

**Facts**

In June 2011, eleven-year-old C.P. spent two to three nights a week at the home of a close family friend, Ina Sexton. Ina's daughter was Pam Sexton. Pam's girlfriend's brother, Claspell, occasionally mowed Ina's grass. One day when Claspell was there to mow, Claspell sat down on the couch next to C.P., who was drawing. C.P. dropped his pen, and Claspell reached for it and put it on a table. Then Claspell started grabbing C.P.'s "private area," kissing C.P.'s neck, and saying "I love you." Tr. p. 33. C.P. scooted away from Claspell, went into his bedroom, and locked the door. Pam, who had been outside, came inside and saw Claspell knocking on C.P.'s bedroom door. Although C.P. did not open the door for Claspell, he opened it for Pam and told her what had happened. C.P. reported the incident to his mother, and she reported it to the police.

During a videotaped interview with police, Claspell claimed that he was picking on C.P. by poking and pinching him, which caused the pen to fall. When the pen fell,

2

Claspell reached for it and accidently touched C.P.'s penis. Claspell also stated that, when he sat next to C.P., he leaned across C.P. to look at C.P.'s drawing and breathed on his neck.

The State charged Claspell with Class C felony child molesting. At the beginning of the trial, the parties discussed the admissibility of a redacted version of Claspell's interview with police. Claspell claimed that several statements made by the police officers were hearsay or opinion. The State explained that it was unable to redact two of the portions that Claspell objected to and that it would mute those portions when the video was played to the jury. The trial court overruled the remaining objections and agreed to give a limiting instruction. Claspell also requested that the ongoing objection be noted, and the trial court agreed that a record had been made regarding Claspell's objections to the video.

C.P. testified at trial. Pam also testified regarding what C.P. told her about the incident. Before the video of the police interview was played, the trial court instructed the jury:

> On the recorded statement that you are viewing of the Defendant and the police officers, you are instructed that any statements made by the police officer are not evidence and are not to [sic] considered by you as evidence. Certain things that the officer said and representations that they made during the interview may or may not have been true. Those statements should be considered only as part of the questioning of the defendant for the purpose of eliciting or drawing out information from the Defendant.

Tr. pp. 74-75. The jury found Claspell guilty as charged, and the trial court sentenced him to five years in the Department of Correction. Claspell now appeals.

3

**Analysis**

*I. Admissibility of the Video*

Claspell contends that various portions of the video of his interview with police were inadmissible. The admission or exclusion of evidence rests within the sound discretion of the trial court and is reviewed for an abuse of discretion. Conley v. State, 972 N.E.2d 864, 871 (Ind. 2012). "An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it." Id.

At trial, Claspell objected to specific statements as opinion and hearsay. On appeal, Claspell challenges the police officers statements during the interview as improper assessments of Claspell's credibility, vouching for C.P.'s credibility, and repetition of C.P.'s allegations. Claspell also claims that the police officers statements violated Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). It is well settled that "'a defendant may not argue one ground for objection at trial and then raise new grounds on appeal.'" Turner v. State, 953 N.E.2d 1039, 1058 (Ind. 2011) (quoting Gill v. State, 730 N.E.2d 709, 711 (Ind. 2000)). Thus, the new claims raised by Claspell on appeal are not properly before us.[1]

Even if these claims had been preserved, in his brief, Claspell does not identify what specific statements in the fifty-minute interview were inadmissible. Instead, he argues generally that, to the extent the officers' statements fell into various categories, they were inadmissible. Indiana Appellate Rule 46(A)(8)(a) requires the argument to be

---

[1] Claspell does not argue that the purported errors amount to fundamental error.

supported by cogent reasoning and "citations to the authorities, statutes, and the Appendix or parts of the Record on Appeal relied on . . . ." Claspell has failed to provide such citations to the record, and we will not review the entire video to determine which statements may or may not fall into the various categories that Claspell now complains about. These arguments are waived.

Waiver notwithstanding, Claspell has not established reversible error. First, at trial, the State explained that it was unable to redact two of the portions of the video and planned to mute them when it was played to the jury. The trial court informed the jury that the video had been edited and the volume would be "cut down" in two sections to comply with the Indiana Rules of Evidence and instructed the jury that this "should not be given any consideration[.]" Tr. p. 74. Accordingly, we fail to see how Claspell was harmed by these portions of the video. See VanPatten v. State, 986 N.E.2d 255, 267 (Ind. 2013) (observing that errors in the admission of evidence must be disregarded as harmless error unless they affect a party's substantial rights); Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

As for the remaining portions of the video to which Claspell objected, prior to showing the video, the trial court instructed the jury that the statements by the police officers were not to be considered as evidence and should considered only for the purpose of drawing out information from Claspell. "A timely and accurate admonition is presumed to cure any error in the admission of evidence." Banks v. State, 761 N.E.2d 403, 405 (Ind. 2002) (quotation omitted). Claspell does not acknowledge this

5

admonishment, let alone explain why it was insufficient to cure the purported errors. Thus, Claspell has not established that the admission of the video is a basis for reversing his conviction.

## II. Admissibility of Pam's Testimony

Claspell argues that the trial court improperly allowed to Pam to testify to "certain statements" allegedly made by C.P. as excited utterances under Evidence Rule 803(2). Appellant's Br. p. 8. Pam testified that when she came back inside the house Claspell was knocking on the bedroom door, she then knocked on the door, and C.P. let her in. She testified that C.P. told her Claspell "had touched him down there."[2] Tr. p. 58. Claspell contends the State did not meet its burden of showing that C.P.'s statement to Pam was an excited utterance. Claspell, however, provides no analysis of the excited utterance exception as it relates to Pam's testimony. Accordingly, this issue is waived. See Ind. Appellate Rule 46(A)(8)(a).

Waiver notwithstanding, Pam's testimony was merely cumulative of C.P.'s trial testimony and is not inconsistent with Claspell's own statement to police in which he admitted to touching C.P.'s penis as he reached for the pen, albeit accidentally. Even if C.P.'s statement to Pam was not admissible as an excited utterance, the admission of hearsay evidence is not grounds for reversal where it is merely cumulative of other

---

[2] Prior to Pam testifying, Claspell objected to Pam stating what C.P. told her, and the trial court overruled the objection. Claspell did not make a contemporaneous objection during Pam's testimony, and Claspell does not identify the specific statements that he believes were inadmissible in his brief. We assume that he takes issue with this statement.

6

evidence admitted. See VanPatten, 986 N.E.2d at 267. Thus, Claspell has not established that the admission of Pam's testimony amounts to reversible error.

### III. Sentence

Claspell argues that his five-year sentence is inappropriate. Indiana Appellate Rule 7(B) permits us to revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. Although Rule 7(B) does not require us to be "extremely" deferential to a trial court's sentencing decision, we still must give due consideration to that decision. Rutherford v. State, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007). We also understand and recognize the unique perspective a trial court brings to its sentencing decisions. Id. "Additionally, a defendant bears the burden of persuading the appellate court that his or her sentence is inappropriate." Id.

The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." Cardwell v. State, 895 N.E.2d 1219, 1225 (Ind. 2008). We "should focus on the forest— the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." Id. Whether a sentence is inappropriate ultimately turns on the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case. Id. at 1224. When reviewing the appropriateness of a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in

7

sentencing the defendant, including whether a portion of the sentence was suspended. Davidson v. State, 926 N.E.2d 1023, 1025 (Ind. 2010).

As for the nature of the offense, Claspell touched C.P.'s penis over his pants on one occasion. Claspell admitted touching C.P.'s penis to police, but he claimed it was an accident. Although it is undisputed that Ina and her family were close friends of C.P. and his family, the record simply does not establish that Claspell had a position of trust with C.P. In fact, there is little evidence about the relationship between Claspell and C.P. other than what Claspell told police, including that he had met C.P. "half a dozen times" over the course of three or four years and that they had previously watched fireworks together. Ex. 2 at 9:19.

As for his character, forty-eight-year-old Claspell has led a relatively law abiding life, having only been convicted of Class A misdemeanor driving while suspended in 2004. The State asserts that Claspell was previously accused of abusing another child and refused to take responsibility. However, the record shows that upon investigation no charges were filed and that the child who made the allegations against Claspell admitted to lying.[3] Claspell was honorably discharged from the United States Army and was helping care for his ill mother at the time of the offense. Given the nature of the offense and the character of the offender, we believe Claspell's five-year sentence is inappropriate and should be reduced to the advisory sentence of four years.

---

[3] The State cites C.P.'s mother's testimony at the sentencing hearing that Claspell was found guilty in two other counties. When questioned about where she learned this information, C.P.'s mother stated, "It was found on the computer through a friend of mine." Tr. p. 112. Neither Claspell's testimony nor the pre-sentence investigation report support this assertion.

**Conclusion**

Claspell has not established that the admission of the video or Pam's testimony was reversible error. Based on the nature of the offense the character of the offender, we believe Claspell's sentence should be reduced to the advisory sentence of four years. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

BAKER, J., and CRONE, J., concur.