# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 43577

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Opinion No. 82 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: December 12, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ENRIQUE LOMELI RODRIGUEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. George A. Southworth, District Judge.

Judgment of conviction for witness intimidation, solicitation to commit witness intimidation, and violation of a no-contact order, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Theodore S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

GUTIERREZ, Judge

Enrique Lomeli Rodriguez appeals from his judgment of conviction, following a jury trial, for witness intimidation, solicitation to commit witness intimidation, and violation of a no-contact order. Specifically, Rodriguez argues the district court erred in excluding audio of recorded telephone calls between Rodriguez and his girlfriend, but instead permitted translated transcripts of the calls to be read aloud to the jury. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Rodriguez and his girlfriend were involved in a physical altercation. Police charged Rodriguez with domestic battery in the presence of a child. A no-contact order was entered prohibiting Rodriguez from having any contact with his girlfriend. While in custody on the

1

domestic battery charge, Rodriguez repeatedly telephoned his girlfriend from the jail. These phone conversations were recorded by the jail. During the conversations, both Rodriguez and his girlfriend spoke in Spanish. Rodriguez asked his girlfriend to tell the individuals who witnessed the altercation "not to go to court," and Rodriguez tried to persuade his girlfriend to get the case dismissed.

Based upon these recorded conversations, the State charged Rodriguez with witness intimidation, Idaho Code § 18-2604(3); solicitation to commit witness intimidation, I.C § 18-2001; and violation of a no-contact order, I.C. § 18-920. Rodriguez was also charged with domestic battery in the presence of children and domestic assault in the presence of children based upon the altercation. Prior to trial, both the domestic battery and domestic assault charges were dismissed.

In preparation for trial, the State used a translator to translate the recorded Spanish conversations into English. The trial court held a pretrial hearing to determine the admissibility of the transcripts and to decide whether the translator was required to testify at trial. The State acknowledged that it intended to present the translated transcripts to the jury. Rodriguez, who admitted to having received copies of the audio recordings and corresponding translated transcripts, did not challenge the accuracy of the translation. He did, however, object to the court admitting the transcripts without requiring the State to lay a proper foundation through the testimony of the translator, who would not be available to testify at trial. To address Rodriguez's concern, the court held a pretrial hearing to allow the State an opportunity to lay a foundation for the translated transcripts. At the conclusion of the hearing, the court ruled the State had laid a sufficient foundation as to the translated transcripts, but the State would still be required to lay a sufficient foundation as to the actual phone calls.

During the jury trial, the State presented evidence of the content of the recorded jail conversations by having two individuals read the translated transcripts aloud to the jury. A male read the part of Rodriguez while a female read the part of Rodriguez's girlfriend. Rodriguez objected to this procedure, stating "we object to [the transcripts] being read to the jury because they're not being able to listen to the audio recording." At no time were the audio recordings played for or made available to the jury.

At the close of trial, the court instructed the jury to determine what, if any, relevance the transcribed phone calls had and whether the transcriptions were accurate. The jury returned

2

guilty verdicts on all three counts. The court entered a withheld judgment on all three counts. Rodriguez timely appeals.

## II.

## ANALYSIS

Rodriguez argues the district court erred when it denied Rodriguez's request to play the audio recordings of the phone conversations for the jury. In denying Rodriguez's request, the district court reasoned that the jury should not hear the audio recordings because it was unlikely they would be able to understand the Spanish conversations. Further, if any of the jurors understood Spanish, it would be improper if they performed their own translations.

This Court reviews trial court decisions admitting or excluding evidence under an abuse of discretion standard. *Dachlet v. State*, 136 Idaho 752, 755, 40 P.3d 110, 113 (2002). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the lower court correctly perceived the issue as one of discretion, acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it, and reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989).

As the purported basis of the court's error, Rodriguez contends that reading the English translated transcripts of the audio recordings to the jury, without also playing the underlying Spanish audio recordings for the jury, violated the best evidence rule. Because this is an issue of first impression for Idaho courts, we look to interpretation of the Idaho Rules of Evidence as well as the Federal Rules of Evidence, from which Idaho's rules were fashioned.

The best evidence rule states that "to prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by statute." I.R.E. 1002; *see also* FED. R. EVID. 1002 ("An original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."). The purpose of this rule is to safeguard against inaccuracies or fraud by requiring the production of original documents. FED. R. EVID. 1001 advisory committee's note 1972. The rule directs a party that to prove content, the party must produce the original, a duplicate, or offer an adequate explanation why the party cannot do so. I.R.E. 1002, 1003; FED. R. EVID. 1002, 1003. Thereafter, secondary evidence may be admissible as evidence of the original. I.R.E. 1004; FED. R. EVID. 1004. The best evidence rule does not

3

require a party to present the original "best" evidence to the jury. *See State v. Romo*, 941 N.E.2d 504, 508 (Ind. 2011) ("Applying the rule to limit the evidence of content to the original Spanish recordings would not serve the purpose of the rule because it could not prove any content to the jury.").

Here, we conclude the best evidence rule is not implicated for two reasons. First, the accuracy of the translation was not at issue. Prior to trial, Rodriguez was concerned with whether there was adequate foundation for admission of the transcripts since the translator would be unavailable at trial. In a pretrial hearing, the State presented the translator for examination, and the district court ruled the transcripts would be admissible on the condition that the State lay a proper foundation for the phone calls. Then, during trial, Rodriguez objected generally to having the transcripts read to the jury without jurors also hearing the audio recordings. At no time did Rodriguez specifically contend the English translation was not accurate. Second, the State produced the original audio recordings, and the court admitted them as evidence. The best evidence rule requires production of the original, not presentation to the jury. Rodriguez acknowledged that he received both the translated transcripts and the audio recordings prior to trial. Because Rodriguez did not challenge the accuracy of the secondary evidence as compared to the original, and because the State produced the original, the best evidence rule was not implicated.

Moreover, the court acted well within its discretion in refusing to play the audio recordings for the jury. A court may properly exclude relevant evidence when "its probative value is substantially outweighed by danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403. Before excluding relevant evidence, the district court must conduct an analysis under I.R.E. 403. *State v. Parker*, 157 Idaho 132, 138-39, 334 P.3d 806, 812-13 (2014). Allowing a presumably English-speaking jury to hear audio recordings in a foreign language poses a substantial risk of misleading the jury and confusing the issues. *See, e.g.*, *United States v. Estrada*, 256 F.3d 466, 473 (7th Cir. 2001) (affirming the district court's apparent finding that there was no value in allowing the jury to hear tapes recorded in Spanish).

Rodriguez contends, however, that by not playing the Spanish audio recordings at trial, the jury was unable to hear the "tone and inflection with which the remarks were uttered." Rodriguez argues that *how* he said the words is almost as important as the words themselves.

This argument is unavailing. Courts have consistently held that jurors who do not speak a particular language are unlikely able to accurately discern meaning behind various inflections of a foreign tongue. *United States v. Franco*, 136 F.3d 622, 629 (9th Cir.1998) (affirming district court's ruling that "inflections and emphasis in a foreign language would not be enlightening to the jury, and might be misleading"); *United States v. Grajales-Montoya*, 117 F.3d 356, 367 (8th Cir. 1997) (affirming district court's ruling that listeners not proficient in Spanish would not be able to "discern relevant inflections and idiosyncrasies"). At trial, Rodriguez presented no evidence as to why the way in which he spoke the words contradicted the transcribed meaning of the words. And, on appeal, Rodriguez provides no support as to why playing the recordings would have provided discernable, relevant evidence. *See Romo*, 941 N.E.2d at 509 (finding no abuse of discretion where defendant failed to provide any reason why playing the recording for jury would provide discernable, relevant evidence of demeanor, tone, inflection, etc.). His suggestion that he *could* have uttered the remarks "while being flippant or when joking" does not provide a basis for an abuse of discretion in the district court's finding that the Spanish audio recordings were more prejudicial than probative.

Finally, courts routinely allow transcripts of recorded conversations to be admitted as substantive evidence without playing the underlying foreign language audio recording during trial. *See, e.g.*, *United States v. Valencia*, 957 F.2d 1189, 1194 (5th Cir. 1992) ("an English translation transcript can be introduced into evidence without admitting or playing the underlying foreign language tape for the jury"), *overruled on other grounds by United States v. Keith*, 230 F.3d 784 (5th Cir. 2000); *United States v. Bahadar*, 954 F.2d 821, 829 (2d Cir. 1992) (finding no abuse of discretion where prosecution read English translations of recorded conversations to jury instead of playing recordings in foreign language). Thus, the procedure employed by the district court in this case was not an abuse of discretion. Therefore, we conclude the district court did not err by not playing the Spanish audio recordings for the jury during trial.

## III.
## CONCLUSION

Rodriguez has not shown that the district court abused its discretion by failing to play the Spanish audio recordings for the jury despite allowing their English translations to be read to the jury. Accordingly, we affirm Rodriguez's judgment of conviction.

Chief Judge MELANSON and Judge GRATTON **CONCUR**.

5